**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000025
20-FEB-2014
08:03 AM**

NO. CAAP-13-0000025

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
BONG AGUSTIN ONZA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CRIMINAL NO. 11-1-139)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Reifurth, JJ.)

Defendant-Appellant Bong Agustin Onza (**Onza**) appeals from the October 8, 2012 "Findings of Fact, Conclusions of Law and Order Denying [Onza's] Motion to Withdraw Guilty Plea"[1] (**Denial Order**) and the December 18, 2012 "Judgment of Conviction and Probation Sentence"[2] (**Judgment**) both entered in the Circuit Court of the Third Circuit (**circuit court**).

On appeal, Onza contends (1) the circuit court erred by refusing to set aside his plea, and (2) that he was denied effective assistance of counsel.

I.  BACKGROUND

On April 7, 2011, Onza was indicted for Terroristic Threatening in the First Degree, in violation of Hawaii Revised

---

[1]     The Honorable Greg K. Nakamura presided unless otherwise noted.

[2]     The Honorable Glen S. Hara presided.

Statutes (**HRS**) §§ 707-715(1) (Supp. 2013)[3] and 707-716(1)(e) (Supp. 2011).[4] On November 14, 2011, the State of Hawai'i (**State**) filed a "Complaint Superceding Indictment" adding a second count, Criminal Contempt of Court, HRS § 710-1077(1)(g) (1993).[5] Onza pled guilty to both counts the next day.

At the change of plea hearing on November 15, 2011, the circuit court extensively questioned Onza according to the mandates of Hawai'i Rules of Penal Procedure (**HRPP**) Rule 11. Onza testified he could speak, read, write, and understand English. Onza testified his lawyer explained the State's evidence against him. Onza confirmed his attorney explained the charges and defenses, and that he understood he was entitled to a jury trial. Onza also confirmed the factual basis of the charges. The circuit court subsequently found Onza knowingly, intelligently, and voluntarily entered his plea with the understanding of the consequences. Also on November 15, 2011,

---

[3] HRS § 707-715(1) provides in part:

§ 707-715(1) **Terroristic threatening, defined.** A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage or harm to property of, including the pets or livestock, of another or to commit a felony:

(1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

[4] HRS § 707-716(1)(e) provides in part:

§ 707-716(1)(e) **Terroristic threatening in the first degree.** (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

.  .  .  .

(e) With the use of a dangerous instrument[.]

[5] HRS § 710-1077(1)(g) provides in part:

§ 710-1077(1)(g) **Criminal contempt of court.** (1) A person commits the offense of criminal contempt of court if:

.  .  .  .

(g) The person knowingly disobeys or resists the process, injunction, or other mandate of a court[.]

Onza signed a "Waiver of Indictment" which waived, in part, his right to obtain written transcripts of the grand jury proceeding under HRPP Rule 7(c). Onza confirmed he understood the waiver.

By March 16, 2012, Onza had informed his counsel that his guilty plea was not knowing, intelligent and voluntary because he was denied an interpreter, and Onza's counsel filed a "Motion to Withdraw as Counsel." On April 11, 2012, the circuit court filed the "Order Granting Motion to Withdraw as Counsel and for Appointment of Substitute Counsel" appointing Steve Strauss (**Strauss**) as substitute counsel. Before sentencing, on May 22, 2012, Onza filed a motion to withdraw his plea. The circuit court entered its Denial Order on October 8, 2012. The circuit court found:

FINDINGS OF FACT

1.  On April 19, 2011, [Onza] appeared before the Honorable Greg K. Nakamura, with former Deputy Public Defender Mirtha Oliveros for an arraignment and plea.

2.  On April 19, 2011, Ms. Oliveros requested an interpreter for future court appearances.

3.  On April 19, 2011, Judge Nakamura also ordered [Onza] to appear for a June 21, 2011 at 4:00 p.m., pre-trial conference and a jury trial on August 2, 2011 at 9:00 a.m.

4.  On June 21, 2011, [Onza] appeared before Judge Nakamura, without an interpreter, but with former Public Defender Neilani Graham and was ordered to meet with his attorney and appear at a pre-trial conference on July 13, 2011.

5.  On June 21, 2011, no interpreter was requested by [Onza] or his Counsel.

6.  On July 13, 2011, [Onza] appeared for his pre-trial conference and there was no interpreter present or requested.

7.  On August 2, 2011, [Onza] failed to appear for his scheduled jury trial.

8.  A Motion of Revocation of Release on Bail was filed on September 14, 2011.

9.  [Onza] appeared before Judge Nakamura on October 25, 2011 and requested a hearing on the Motion and the Court scheduled a jury trial and hearing on November 22, 2011 at 9:00 a.m.

10. On October 25, 2011, [Onza] appeared with Melody Parker, Deputy Public Defender and did not have an interpreter, nor was one requested.

11. On November 15, 2011, [Onza] appeared before Judge Nakamura with Jennifer Wharton, Deputy Public Defender for a change of plea.

12. On November 15, 2011, no court interpreter was present or requested by [Onza].

13. On November 15, 2011, Judge Nakamura entered into a colloquy with the [Onza] and found that [Onza] knowingly, voluntarily, and intelligently waived his rights regarding (1) his constitutional right to require the State to establish probable cause before a felony prosecution can begin in circuit court (2) that the State must offer sufficient evidence to "lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion" that the [Onza] has committed the felony charged in order to establish probable cause (3) that if there is a grand jury indictment, then [Onza] has the right to obtain written transcripts of the grand jury proceedings (4) by waiving indictment, [Onza] gives up his right to a probable cause determination and his right to obtain written transcripts of grand jury proceedings.

14. On November 15, 2011, [Onza] entered a plea of guilty as to Terroristic Threatening in the First Degree and Criminal Contempt of Court.

15. At the change of plea hearing, Judge Nakamura went over the change of plea form with [Onza].

16. [Onza] understands both English and Ilocano.

17. The Court finds that [Onza] has a sufficient understanding and command of English to understand what is happening in his case and at court proceedings.

18. The evidence did not indicate that Judge Nakamura had any reason to doubt [Onza] had a sufficient understanding of English.

19. This Court also found that Deputy Public Defender, Jennifer Wharton, an experienced attorney has appeared before this Court on numerous occasions could effectively communicate in English with [Onza].

20. Jennifer Wharton met with [Onza] on numerous occasions without the use of an interpreter.

21. Jennifer Wharton as an experienced attorney did not feel an interpreter was necessary to communicate with [Onza].

22. [Onza's] pleas were knowingly, voluntarily and intelligently entered into[.] There were on changed circumstances or new information to justify withdrawal of [Onza's] pleas.

4

The circuit court concluded:

CONCLUSIONS OF LAW

1.  When a request to withdraw a guilty plea is made before the sentence is imposed, the court observes a "liberal approach," and "the court should grant the motion if the [Onza] has presented a fair and just reason for his request and the State has not relied upon the plea to its substantial prejudice." State v. Gomes, 79 Hawai'i 32, 36, 897 P.2d 959, 963 (1995).

2.  The two fundamental bases for showing a fair and just reason for withdrawing a plea are: (1) the [Onza] did not knowingly, intelligently or voluntarily waive his rights or (2) there are changed circumstances or new information to justify a withdrawal of that plea. Id. at 27, 897 P.2d at 964.

3.  There is no fair and just reason for granting withdrawal of [Onza's] plea.

4.  There was an express waiver regarding a right to an interpreter as [Onza] had a sufficient command and understanding of the English language.

5.  [Onza] waived his right to a grand jury transcript during the waiver of the indictment.

On December 18, 2012, the circuit court entered the Judgment and on January 9, 2013, Onza filed a notice of appeal from the Judgment.

## II.  STANDARD OF REVIEW

### A.  Withdrawal of Plea

"Generally, we review the trial court's denial of a motion to withdraw guilty plea for abuse of discretion." State v. Topasna, 94 Hawai'i 444, 452, 16 P.3d 849, 857 (App. 2000). If our review of the court's discretion hinges on the constitutional inquiry whether the defendant knowingly, intelligently, and voluntarily entered his or her plea of guilty, we review de novo. Id.

A trial judge is constitutionally required to ensure that a guilty plea is voluntarily and knowingly entered. Although no specific dialogue is required, the court should make "an affirmative showing by an on-the-record colloquy between the court and the defendant wherein the defendant is shown to have a full understanding of what the plea of guilty connotes and its consequences."
State v. Williams, 68 Haw. 498, 499, 720 P.2d 1010, 1012 (1986)[.]

5

State v. Solomon, 107 Hawai'i 117, 126, 111 P.3d 12, 21 (2005) (internal quotation marks and citation omitted).

### B. Ineffective Assistance of Counsel

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted).

### III. DISCUSSION

**A. The circuit court's denial of Onza's motion to withdraw plea was proper because Onza's change of plea was knowing, intelligent, and voluntary.**

"A defendant does not enjoy an absolute right to withdraw his or her guilty plea." Topasna, 94 Hawai'i at 451, 16 P.3d at 856. Where the motion is made before sentencing, "the motion should be granted if the defendant has presented a fair and just reason for his request and the prosecution has not relied upon the guilty plea to it's substantial prejudice." Id. at 451, 16 P.3d at 856 (brackets omitted). There are two recognized bases for a fair and just reason to withdraw a guilty plea: (1) "that the defendant did not knowingly, intelligently[,] and voluntarily waive the rights relinquished upon pleading guilty[;]" or (2) "that changed circumstances or new information justify withdrawal of the plea." Id. at 452, 16P.3d ·at 857.

To determine whether a waiver was voluntarily and intelligently undertaken, we look to the totality of facts and circumstances of each particular case. See State v. Friedman, 93 Hawai'i, 63, 68-69, 996 P.2d 268, 273-74 (2000). The defendant

has the burden of establishing plausible and legitimate grounds for the withdrawal. Topasna, 94 Hawai'i at 451, 16 P.3d at 856.

Onza contends the circuit court erred by denying his motion to withdraw plea because he did not have the benefit of an interpreter and thus could not knowingly, intelligently, and voluntarily waive his right to trial. This contention is without merit because "where a defendant has some knowledge of English and he is reasonably able to converse in English, it is within the discretionary power of the trial court whether to appoint or not to appoint an interpreter." Cun-Lara v. State, 126 Hawai'i 541, 554, 273 P.3d 1227, 1240 (App. 2012), as amended (Mar. 30, 2012) (citing State v. Faafiti, 54 Haw. 637, 639, 513 P.2d 697, 699 (1973)).

In Cun-Lara, the defendant, through an HRPP Rule 40 Petition for Post-Conviction Relief, contended his no contest plea was not knowing, intelligent or voluntary because he had difficulty understanding English and was not provided an interpreter at his change of plea hearing. See Cun-Lara, 126 Hawai'i at 543, 273 P.3d at 1229. The defendant claimed ineffective assistance of counsel on the same basis. Id. The circuit court denied the petition without a hearing, concluding the defendant failed to raise any colorable claims. In Cun-Lara, we held:

> The totality of the record plainly demonstrates that Cun-Lara sufficiently understood English and specifically, with a single unexplained exception which could have had to do with any number of possible reasons other than an inability to comprehend the language, understood the Circuit Court's questions. At the Change-of-Plea hearing, Cun-Lara told the Circuit Court that he was not having difficulty understanding its questions and that he could read and write in English. Cun-Lara answered the Court's questions during the plea colloquy with yes or no answers, depending on the question, and frequently responded with coherent, full sentences. Cun-Lara was capable of asking, and did ask, the Circuit Court a question regarding a future court appearance.
>
> Cun-Lara informed the Circuit Court that he fully understood the proceeding. The COP Transcript establishes that Cun-Lara understood the questions that the Circuit Court asked him. See Faafiti, 54 Haw. at 639, 513 P.2d at 699-700 (looking at the transcript of defendant's testimony to determine whether the defendant "had sufficient command

of the English language"); *accord People v. Osuna*, 174 Mich.App. 530, 436 N.W.2d 405, 407 (1988) (rejecting claim that the case should be remanded for hearing on whether defendant was sufficiently fluent in English to knowingly waive his rights upon pleading guilty because "the transcript of the plea proceedings indicates that defendant had no problem communicating in English with the lower court").

Id. at 554, 273 P.3d at 1240. Here, the record similarly reveals Onza had sufficient command of the English language.

At Onza's change of plea hearing, the following exchange occurred regarding the factual basis of the charges:

> [circuit court]: Is it true that on March 8th, 2011, in the County and State of Hawai'i, you swung a pipe at [the complaining witness (CW)]?
>
> [Onza]: Yes, Your Honor.
>
> [circuit court]: Okay. And would that be under circumstances that he probably would have been afraid at that time?
>
> [Onza]: I beg your pardon?
>
> [circuit court]: Would that be under circumstances in which [the CW] probably would have been afraid at that time?
>
> [Onza]: Uh, I don't think so.
>
> [circuit court]: He wouldn't have been afraid?
>
> [Onza]: He wouldn't be afraid because like he went come to my driveway but. So I went pick the pipe up cause he was coming to me. He was in my driveway.
>
> [circuit court]: Okay. But you swing the pipe at him?
>
> [Onza]: Yeah.
>
> [circuit court]: Okay. Is it true that, uh, on August 2nd, 2011, South Hilo, County and State of Hawai'i, you missed a court date and you had previously been ordered to appear in court on that date?
>
> . . . .
>
> [Onza]: Yes, guilty to not show up in court.

At the hearing on the motion to withdraw guilty plea, Jennifer Wharton, one of Onza's former Deputy Public Defenders, (**Wharton**) testified:

> [Deputy Prosecuting Attorney (DPA)]: At any time during the change of plea hearing, while the judge was going over the change of plea, did he ever stop you and tell you he did not understand?

8

[Wharton]: No.

[DPA]: Did he ever stop you and tell you that he needed an interpreter?

[Wharton]: No.

[DPA]: If he had done this while the judge was explaining to him, what would you have done?

[Wharton]: I would have told the court.

. . . .

[DPA]: At any time, during your interviews with [Onza], did you feel a need to request an interpreter?

[Wharton]: No.

[DPA]: And why not?

[Wharton]: Because he spoke English fine.

Consequently, we conclude the totality of the record plainly demonstrates Onza sufficiently understood English.

We conclude this holding is consistent with State v. Gomez-Lobato, 130 Hawai'i 465, 312 P.3d 897 (2013). In Gomez-Lobato, the defendant pled not guilty and waived his right to a jury trial. Id. at ___, 312 P.3d at 899. An interpreter assisted the defendant in entering his plea and reviewing the waiver of jury form. The Hawai'i Supreme Court concluded the family court's colloquy was insufficient:

> Although the family court conducted a colloquy with [the defendant] regarding the waiver form, the family court's questions were not sufficient to establish that [the defendant] knowingly, voluntarily, and intelligently waived his right to a jury trial. Specifically, the family court asked [the defendant] whether the form contained his initials and signature, whether he understood "what he was doing and signing," whether the form was explained to him in Spanish, and whether he discussed "this with [his] attorney[.]" Respectfully, in light of [the defendant's] language barrier, his affirmative answers to each of these questions did not establish that he understood he was waiving his right to a jury trial.

Id. at ___, 312 P.3d at 903-04 (footnote omitted). The supreme court held "where a language barrier indicates that a defendant's written waiver executed outside the presence of the judge 'might be less than knowing and intelligent,' the court should take additional steps to ensure the defendant understands the right

9

that he or she is waiving." Id. at ___, 312 P.3d at 904 (citation omitted).

The case at bar is distinguishable because Onza demonstrated a sufficient understanding of English. Onza engaged in dialogue with the circuit court and his counsel, indicating language was not a barrier between Onza and the circuit court. Moreover, Onza himself denied the need for an interpreter on several occasions. Unlike Gomez-Lobato, there was no language barrier constituting a salient fact which would have put the circuit court on notice to take further steps to ensure Onza understood the rights he was waiving.

**B. Onza fails to establish an ineffective assistance of counsel claim.**

To establish an ineffective assistance of counsel claim Onza must show: "(1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and (2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Wakisaka, 102 Hawai'i at 514, 78 P.3d at 327 (internal quotation mark and citation omitted).

To satisfy the first prong, Onza contends Wharton was ineffective because she failed to (1) obtain a translator for Onza's client meetings and change of plea hearing, (2) request a grand jury transcript, and (3) explain the potential defenses. This contention is unsupported by the record. First, Wharton, deemed credible by the circuit court, testified:

> Okay, so you asked why there was no interpreter. Um, on several occasions, [Onza] said he did not need an interpreter. On the day of the change of plea, when I was going through the file to figure out the credit for time served, because he was in custody and the deal was for sixty days, I noticed that, at the initial A and P, an interpreter was requested. I noticed that I had set up an interpreter for his initial interview, which he didn't appear for. And so I asked him, while he was in cell block in the back, I told him there was no interpreter at the court, I asked him if he wanted to continue the court to have an interpreter present, and he said, "No, I understand fine, no need."

10

Second, Onza expressly waived his right to obtain written transcripts of the grand jury proceeding and confirmed his understanding of such waiver. Finally, both Wharton and Onza's testimony confirmed that Wharton explained Onza's defenses. Onza testified:

> [circuit court]: Did your lawyer explain to you what the State's evidence is against you, what your possible defenses might be, and what facts the state must prove in order to obtain convictions against you?
>
> [Onza]: Yes, your Honor.

Wharton testified on cross examination:

> [Strauss]: Okay. Did you explained (sic) to [Onza] in English what his rights of self-defense were?
>
> [Wharton]: I did.
>
> [Strauss]: What did you explain to him?
>
> [Wharton]: He initially told me that they were in his yard and there was more than one man and that they were mobbing him or attacking him. I explained to him he could have the defense of self-defense. We initially were going to go to trial. I told him that I would talk to his mother, because he said his mother was a witness. I had my investigator call his mother. His mother said the guys never went in his yard, that they were out on the street. And I came back for another interview and spoke with Mr. Onza regarding his mother's testimony.
>
> [Strauss]: Did you explain to him what the standard of proof is for self-defense?
>
> [Wharton]: Yes, I did.
>
> [Strauss]: What did you explain to him?
>
> [Wharton]: I explained to him that whether he felt there was an immediate threat of danger to himself he can -- he can defend himself.
>
> [Strauss]: Did you explain to him the standard of proof required and who carried the burden?
>
> [Wharton]: Yes. I explained to him it's beyond a reasonable doubt and that it's the state that has to prove it.

As such, we conclude Onza failed to prove there were specific errors or omissions reflecting Wharton's lack of skill, judgment, or diligence necessary to establish that Wharton's

Wharton's assistance fell below the range of competence demanded of attorneys in criminal cases.

## IV. CONCLUSION

Accordingly, the October 8, 2012 "Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Withdraw Guilty Plea" and the December 18, 2012 "Judgment of Conviction and Probation Sentence" both entered in the Circuit Court of the Third Circuit are affirmed.

DATED: Honolulu, Hawai'i, February 20, 2014.

On the briefs:

Steven D. Strauss
Christopher P. Schlueter
(Law Offices of Steven D.
Strauss)
for Defendant-Appellant.

Shannon M. Kagawa
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge